Mr. Bernstein. Good morning, your honors. You may please depart. My name is Joshua Bernstein of the Office of the State Appellate Defender. I'm here this morning because the state has taken the position in their brief that People v. Cregan essentially abrogates Arizona v. Gantt, and it is a radical position that's not supported by any case law, which in fact does not even reflect the reality of Gantt. As you know, the incident that led to Mr. Glasper's arrest here was a traffic stop. I guess his girlfriend, Ms. Jones, was pulled over for a speeding ticket, and Mr. Glasper was ultimately arrested, after which point Trooper Zarate, an Illinois State Police trooper, conducted a search of a diaper bag in the car where Mr. Glasper had been sitting. It's clear here, based on the progression of the case law that started with Schimel v. California and goes all the way up through Arizona v. Gantt, that the police may not conduct a search of an automobile pursuant to an incident to an arrest once an individual has been restrained and is away from the car, unless there's evidence, of course, of the offense of arrest in the car. In this case, Mr. Glasper was arrested for failure to appear in a DUI case, and the state does not maintain it anywhere in their briefing that there might be evidence of that in the diaper bag. So really what we have here is the state attempting to say that Robinson, which is discussed in People v. Cregan as the basis of the immediately associated doctrine that allows a search of a person incident to arrest, the state maintains that that applies here because the diaper bag was close to Mr. Glasper, and that's simply not the case. If you look at the case law beginning with Schimel, as I said, and going through Arizona v. Gantt, none of the case law discusses the idea that an item is immediately associated with a person who's been removed from a car, handcuffed and restrained by police officers. In fact, that's Arizona v. Gantt in a nutshell. In that case, the defendant was removed from the car, handcuffed, placed in the police car, and then the officer searched the car, finding something in the person's jacket. That's essentially what happened here. Diaper bag, jacket is irrelevant. What is relevant is that Mr. Glasper was under arrest and restrained by the police. Does it make a difference, the nature of the restraint? There is something different in this restraint, isn't there? You mean that he was handcuffed with his hands in front of him? Yes. Your Honor, Justice Scalia's concurrence in Arizona v. Gantt gets to this issue. He basically said no one could provide him an instance where an individual who had been handcuffed and restrained by the police was able to access the interior of an automobile, retrieve a weapon. How extensive was Justice Scalia's study? Well, it was based on Thornton, which is not cited in our briefs. But if you read Thornton, he actually found seven cases in which individuals were able to obtain weapons after they had been restrained. There were seven instances. But no, they were not. I believe there were three where the person was not properly restrained. Three where they wrestled the weapons away from the officer. And one where a handcuffed individual ran a couple of miles through the woods, retrieved a weapon from a house, and was shot dead by the police there. Was that what Scalia was referring to? That's what he was referring to in his concurrence in Gantt, and that's in Thornton, which is not cited. But he said no where? Was he engaging in hyperbole? Well, he is known to do that. But if those are the cases that he came up with, I'll take his word for it. That's really the issue here, Your Honors. This is a search in which Gantt applied. And, in fact, what's interesting about this case is if you watch the videotape and you listen closely, at about minute 23, between minute 23 and minute 24, Officer Zarate is describing his ability to search the car in terms of Belton. In Belton, as you know, which has been seriously restricted by Gantt, in Belton, the officer could search the entire interior of the automobile. And Zarate, and I apologize, I don't remember if he was saying this to Ms. Jones, who was sitting in his car, or if he was saying it to other officers. It's been a while since I watched the tape. But he is saying on the tape at that moment, I had him under arrest, essentially, and I could search the interior of the car. That's different from his justification that he gave at the motion to suppress, which was that he saw furtive movements. And I'll just address that very briefly. This doctrine of furtive movements is attached to Terry v. Ohio and Michigan v. Long and that chain of cases. In all of the cases we cited in our briefs, in all of the cases that discuss furtive movements, discuss it in terms of a Terry stop, which brings us back to Gantt. I'll deal with that in a minute. The furtive movements that justify a search of a vehicle during a Terry stop must be accompanied by other factors. The fact is here, whatever the furtive movements may have been, the intervening event was Mr. Blasper's arrest. He was arrested. Officer Schrocki and Officer Zarate approached the car, knowing he had a warrant for his arrest. There was no way he was getting back into that car. He was going to jail. There's no legal justification for saying, well, he's got a warrant, we're just going to let him get back in the car. He was under arrest. This is a Gantt situation. And the state's invocation of Cregan is improper because Gantt controls. Had there been case law that said, let me step back for a moment. I looked at Cregan this morning. There's no case citing Cregan currently, right now in Illinois, for the idea that you can search an entire automobile incident to arrest based on this idea immediately associated. The state didn't cite a case. The state's citing Robinson, which is the basis of Cregan, that says you can search an automobile incident to arrest. It's just not there. What they're asking for is an extension of law, which is essentially an abrogation of Gantt. And on that basis, we're asking, of course, that you reverse the trial court and that you order this cocaine suppressed and that Mr. Blasper be released. Because without this evidence, of course, there's no way that Mr. Blasper can be convicted. What's your understanding of the furtive movement of the defendants? As Officer Zarate described it, and it does not appear in the videotape, he said he saw his shoulders moving. And that's just not enough. But the key factor here is the furtive movements still require something else. And had this been a Terry stop in which there were furtive movements and something else, in the cases we describe, Smith and I believe it's Cregan and all these other cases, there's always an additional factor. Michigan versus Long was an additional factor. People versus Colyar, the officers approached a car for a Terry stop and they saw a large bullet in plain view. The officers in Michigan versus Long saw a knife in plain view. So the behavior of the defendant, along with some additional factor, is what's required. So furtive movement as a doctrine, so to speak, or whatever we've created here, has as its heart officer safety? That's correct, Your Honor. But as we cited the case from the Wisconsin Supreme Court, which I think neatly encapsulates furtive movements, you might imagine as I was driving down from Chicago for this argument, I thought about, if I pulled over, what would I do? I'd reach for the glove compartment to get out my insurance. That's a furtive movement. That's it in a nutshell, really, Your Honor. But the key thing is it cannot apply in this case because this is not a Terry stop. There's no consequence. What your argument is is that because he was arrested and handcuffed and removed, there's no consequence of a furtive movement. That is correct. That is linked to anything in the car. That's correct, Your Honor. He was not getting back into that car, no matter what. And that's also in Justice Scalia's concurrence in Gantt. He discusses the danger inherent in a Terry stop, which is at its greatest when the officer approaches. It cannot apply when a defendant has been arrested because there's no danger anymore. Well, it's actually immobilized. Yeah, immobilized, really. He was restrained by Officer Schrocki while Officer Zarate tossed the car. So, Your Honor, really, that is the essence of our argument here. You've had a long morning already, and I won't belabor the point. I think it's very simple. This is a black-and-white issue here. Arizona v. Gantt applied. This search was illegal. The cocaine must be suppressed because the search was illegal. And Officer Zarate's evolving justifications for his search tell us that this cries out for a ruling from this court defining, for Officer Zarate and the other police in this state, what they can do in circumstances like this. And what they can do is not what People v. Cregan purports to allow by the state's argument. What they can do is what they didn't do here. And for that reason, we're asking that you reverse and that you offer Mr. Glasper the relief we requested. Unless you have any other questions, Your Honor. Thank you. Thank you very much, Mr. Bernstein. Mr. Reiner. Mayor of Peace Court, good morning, Your Honors. Counsel. Counsel. There are two bases for arguments that this should be affirmed. First is what the trial court found, that the furtive movement was sufficient. And that was coupled with the fact that the defendant was, there was an alert that he was considered armed and dangerous. So you have the combination of the furtive movement and this knowledge that he's potentially dangerous. But hasn't he been immobilized at this point? Well, he was put in handcuffs. Whether that's sufficient to be immobilized, as the trial judge pointed out, Billy the Kid was immobilized with handcuffs and yet he was able to get out. You're citing Billy the Kid to us. Sorry? You are citing Billy the Kid to us. Yes, I am. Because that's what the judge decided. It's part of the record, right? It's part of the record. The second basis is this Cregan versus Gantt. And I think that there is a distinction. If you look at the Gantt facts, in Gantt, Gantt drives into, the police are investigating, Gantt pulls into his driveway, he has an arrest warrant for him, pulls into his driveway, gets out of the car, closes the car, and at that point the officers approach him, say, hey, come here, they approach each other, he's arrested, put in the back of the squad car, and then the police conduct a search of the vehicle. And in that vehicle, in the back seat, they find a jacket that has cocaine in it. There's no immediate association of that jacket with Gantt. In Cregan, the defendant is on the train, he comes off the train, police know that they have a warrant for him, he's carrying these bags, and the officers arrest the defendant. The defendant says, hey, I have a friend here, can she take these bags? And the cops say, no, you can't. We're going to search these bags. The Supreme Court says, based upon these being associated, the immediate association with the defendant, it's permissible to search these bags. So what we have here is really, I think, closer to a Cregan situation, because this diaper bag, which the defendant acknowledged in his testimony was his bag, even if it's in the car, when he's arrested, it is associated with him. The police don't do a general search of this vehicle. They don't open the glove compartment, they don't open the trunk, they don't open anything else. They look at just the bag that was immediately associated with the defendant. So that's why we believe that Gantt is not the controlling case, but Cregan is. Now, you have to say that there is essentially a magic barrier that if the defendant places something in the vehicle right before he is arrested, that prevents the police from being able to search whatever the item that was just put into the vehicle. So the vehicle is some special power that prevents the police from going and looking for something  I don't think that's necessarily what the court would find. These are rather unique circumstances, and certainly it is a potentially interesting test case if it ever goes anywhere else. And certainly the facts allow this court to apply Cregan to this situation. Just a note, yes, the officer did say, actually said to another trooper, and this is actually the defendant's opening brief on page 24, I asked the defendant to step out because he had the warrant, and then I have the right to search his immediate area, which is that bag. So he, at that point, was saying exactly what Cregan says. I have the right to search the immediate area, the immediate association with that defendant. Sounds like a case summary, doesn't it? In a way. Maybe he's going to law school. What? Maybe he's going to law school. Maybe. Just like that. I'm sorry. Where's the trial judge? Oh, yeah, Rosak was the trial judge. Otherwise, we will stand on our briefs on the remaining issues. If there's no other questions, we ask that the court confirm. Thank you. Mr. Gershkin. I may very briefly, Your Honors. The Billy the Kid story, as you heard, it's an interesting story. In any case, this idea of no magic barrier that counsel just brought up, that something within the vehicle is protected, he cites no case law, no case law that says there's not a magic barrier. And it's not a magic barrier that we're talking about. What we're talking about here is the logical extension of the Schimel, Thornton, Belton, and Arizona v. Gantt cases. And that is, you can search a car for officer protection or to find evidence of the crime of arrest. Period. It's not a magic barrier. This is a United States Supreme Court doctrine based on the Fourth Amendment of the United States Constitution, which protects every one of us from unreasonable intrusions by officers of the state. And that's what happened here. Officer safety as a justification in case law has been extended to beyond the time it's immobilized. Am I correct? Not in this context, Your Honor. No, I said general proposition. I'm talking general law. Well, that's what appears to happen in Cregan. As you might imagine, I believe Justice Burke is on the right side in Cregan. And I'd also like to comment that Justice Burke's dissent in that case was not an invitation to the state to test this idea, but a warning that the Illinois Supreme Court potentially muddied the waters here. The factual scenario is not before this Court. Well, that was the genesis of my question, basically, is haven't we in Cregan gone into that, expanded that area of permissibility? Well, you know, I would argue that there's, as I said, I think Cregan is wrongly decided. The fact that the defendant in Cregan was under arrest and unable to access the bag, I think really, although I'm not sure that the defendant's argument that Gant necessarily applied, I believe, you know, in Cregan the defendant argued that Gant applied. I believe that if you look at the evolution of these cases, particularly what Gant did to Belton, it's clear that the US Supreme Court is kind of saying enough's enough. And I think the Illinois Supreme Court might have gone a little too far. Should I get that case, I'm sure I'll be before your honors arguing it. That's really all I have to say. I thank you for your time. And again, we're hoping you will reverse the trial court. Thank you. And thank you both for your argument today. We will take this matter under advisement. I thank you for the written disposition.